RECEIVED

APR 23 2019

MAGISTRATE JUDGE
SHEILA M. FINNEGAN

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF )<br>)<br>THE EXTRADITION OF )<br>)<br>TSVETOMIR SIMEONOV )<br>) | Case No. **19 CR 344**<br><br>FILED UNDER SEAL<br>**MAGISTRATE JUDGE FINNEGAN** |

**COMPLAINT IN FURTHERANCE OF EXTRADITION PURSUANT TO
TITLE 18, UNITED STATES CODE, SECTION 3184**

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to the Republic of Bulgaria ("Bulgaria").

2. There is an extradition treaty in force between the United States and Bulgaria. *See* Extradition Treaty Between the Government of the United States of America and the Government of the Republic of Bulgaria and the Agreement on Certain Aspects of Mutual Legal Assistance in Criminal Matters Between the Government of the United States of America and the Government of the Republic of Bulgaria, U.S.-Bulg., Sept. 19, 2007, S. TREATY DOC. NO. 110–12 (2008) (the "Treaty").

3. Pursuant to the Treaty, the Government of Bulgaria has submitted a formal request through diplomatic channels for the extradition of Tsvetomir Simeonov ("SIMEONOV").

4. According to the information that Bulgaria has provided to the United States, on November 19, 2004, the Regional Court-Kazanlak, Bulgaria convicted

SIMEONOV of unlawfully remanufacturing and repairing gas pistols into firearms, in violation of Article 339, paragraph 1 of Bulgaria's Criminal Code, and unlawfully acquiring and holding re-manufactured firearms and ammunition, in violation of Article 337, paragraph 1, of the same Code. The Regional Court-Kazanlak sentenced SIMEONOV to a total of seven years and six months of imprisonment, which sentence came into force on December 22, 2004. SIMEONOV was not present in court for his sentencing, as he has not appeared since voluntarily absenting himself from court in the middle of the criminal proceedings against him. His counsel, however, was present in court.

5. Bulgaria also has informed the United States that, on December 27, 2001, during the preliminary pretrial proceedings, a decision issued placing SIMEONOV under criminal investigation as a suspect; this decision was presented to SIMEONOV in person and in the presence of defense counsel, whom he appointed ("Counsel 1"). On the same date, and in the presence of Counsel 1, the Bulgarian investigating authority questioned SIMEONOV. On November 3, 2002, SIMEONOV read the investigation file in the presence of his newly appointed defense counsel ("Counsel 2"). On August 5, 2002, SIMEONOV was presented with all materials that were gathered during the preliminary pretrial proceedings; these actions were carried out with SIMEONOV's participation and in Counsel 2's presence. On June 27, 2002, the court held the first public court hearing in the criminal case against him. SIMEONOV attended and requested an opportunity to appoint new defense counsel. Therefore, the court postponed the hearing until October 14, 2002. On

2

October 14, 2002, SIMEONOV attended the postponed court hearing with a third defense attorney ("Counsel 3"). At this hearing, almost all evidence was gathered under the case. SIMEONOV failed to appear at any additional court hearings but continued to be represented by defense counsel at all hearings where the court took any further action – initially by Counsel 3 and subsequently by a public defender ("Counsel 4") until the end of the criminal proceedings.

5. SIMEONOV committed the offenses within the jurisdiction of Bulgaria.

6. On January 4, 2006, Deputy Regional Judge N. Marinova in Kazanlak, Bulgaria, issued an Order of Detention for SIMEONOV.

7. Bulgaria has informed the United States that the Sentence and the Order of Detention issued against SIMEONOV (specifically, the person with SIMEONOV's full name, birthdate, and unique Bulgarian civil identification number ending in ▮) were issued on the basis of the following facts:

   a. On December 19, 2001, officers of the Fight Against Organized Crime Unit ("FAOCRO") in Kazanlak, Bulgaria, received information that SIMEONOV and an individual named Rumen Nikolov YORGOV ("YORGOV") would be selling "Makarov" pistols, which are military firearms, outside the town of Kazanlak. SIMEONOV and YORGOV previously were known to FAOCRO as participants in channels for exporting, producing, and selling weapons parts in different regions of the country.

   b. On December 20, 2001, officers of FAOCRO and the Kazanlak

3

Regional Police raided SIMEONOV's house in Kazanlak. Officers testified that in the basement of SIMEONOV's home, they found SIMEONOV and YORGOV cleaning disassembled parts of Makarov pistols. In a corner of the room, the officers found a pot containing boiling caustic soda, used to oxidize the movable parts of a weapon. A forensic chemist provided testimony that the substance in the pot was a chemical mixture used for oxidation.

c. The officers arrested SIMEONOV and YORGOV, searched the house, and seized four sets of Makarov pistols, other parts of Makarov pistols, ammunition, various tools and equipment, and three packages of white substance. The court noted that the law enforcement officers had made a video recording that provided a detailed view of this room in SIMEONOV's house.

d. The officers also searched YORGOV's house, from which they seized a pistol barrel and ten ball cartridges of several calibers.

e. Through testimony from a ballistics expert, the prosecution established that the four Makarov pistols the officers seized at SIMEONOV's house had been re-manufactured from Baikal gas pistols, whose gas tubes had been removed and replaced with rifle barrels designed for Makarov pistols.

f. The ballistics expert provided testimony, and the court found, that when the officers confiscated the pistols, they required only a few

4

    additional repair works to become fully ready for use. Only minimal knowledge of the structure of Makarov pistols was needed to complete the job, along with tools SIMEONOV had for the metal work. Completing the assembly did not require any special knowledge about the weapons' construction.

g. The ballistics expert found traces of metalworking on some of the seized items and confirmed that the factory-set serial numbers 2689, 2873, 2791, and 2553 had been removed from the pistols. The expert tested the seized pistols and confirmed that, when assembled, they were capable of striking down live targets. The extradition request includes photographs of the seized weapons in dismantled and assembled states.

h. The court also found, based on the testimony at trial, that the ammunition officers seized from YORGOV's house could be used for its purpose.

i. Peter Savov, a gun shop owner in Kazanlak, Bulgaria, testified at trial that SIMEONOV and YORGOV purchased the gas pistols, serial numbers 2791, 2873, 2553, 2689, from his shop two days before their arrest. (This evidence contradicted YORGOV's claim that he had been in the shop only once to buy an air gun.) According to Savov, SIMEONOV told him that he was buying the weapons to sell them. Savov also provided a physical description of SIMEONOV,

      and noted that he had seen SIMEONOV on previous occasions because SIMEONOV had bought approximately 25 pistols from Savov's store over a three-to-four month period in 2000–2001.

j. The court found that SIMEONOV and YORGOV had acted together, with a common purpose.

k. According to the Bulgarian unit that maintains information concerning permits that have been issued for activities involving firearms and ammunition – the Control of the Hazardous Means Unit – SIMEONOV did not have a permit on December 20, 2001, to engage in activities involving firearms and ammunition, including carrying, storage, purchase, sale, and trade.

l. The Bulgarian court found that SIMEONOV and YORGOV had acted illegally, and did not have permission from the competent authorities, to repair or remanufacture the Baikal gas pistols into military Makarov pistols, or to acquire or hold the pistols or the ball cartridges.

8.     SIMEONOV is believed to be within the jurisdiction of this Court in Des Plaines, Illinois.

9.     Michael N. Jacobsohn, an Attorney-Adviser in the Office of the Legal Adviser of the U.S. Department of State, has provided the U.S. Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that Article 2 of the Treaty

covers the offenses for which the Government of Bulgaria seeks extradition, and confirming that the documents that Bulgaria submitted supporting the request for extradition bore the certificate or seal of the Ministry of Justice of the Republic of Bulgaria, in accordance with Article 9 of the Treaty, so as to enable them to be received into evidence.

10. The declaration from the U.S. Department of State with its attachments, including copies of the diplomatic note from Bulgaria, the Treaty, and the documents Bulgaria submitted in support of the request (marked collectively as Government's Exhibit #1), are filed with this complaint and incorporated by reference herein. The extradition request includes photographs of SIMEONOV associated with his Bulgarian identity documents, which pertain to his full name and birthdate, and the aforementioned civil identification number ending in ███.

11. SIMEONOV likely would flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with the extradition treaty between the United States and the Republic of Bulgaria and 18 U.S.C. § 3184, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

_____
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 23rd day of April, 2019 at Chicago, Illinois.

_____
United States Magistrate Judge